| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT** <br> **SOUTHERN DISTRICT OF NEW YORK** | <u>**NOT FOR PUBLICATION**</u> |

-----------------------------------------------------------------------x

In re:                                                                                  Chapter 11

FOOD MANAGEMENT GROUP, LLC,                        Case No. 04-22880 (ASH)
KMA I, INC.,                                                                 04-22890 (ASH)
KMA II, INC.,                                                                04-22891 (ASH)
KMA III, INC.,                                                               04-22892 (ASH)
BRONX DONUT BAKERY, INC.,                                      04-20312 (ASH)

                                                                                        (Jointly Administered)

                                    Debtors.
-----------------------------------------------------------------------x

FOOD MANAGEMENT GROUP, LLC,
KMA I, INC.,
KMA II, INC.,
KMA III, INC.,
BRONX DONUT BAKERY, INC.,                                      Adversary Proceeding

                                    Plaintiffs,                           Case No. 05-08636 (ASH)

         v.

MATRIX REALTY GROUP, INC.,

                                    Defendant.
-----------------------------------------------------------------------x

# **A P P E A R A N C E S :**

**DRINKER BIDDLE & REATH LLP**
**Attorneys for Plaintiff, Janice B. Grubin as Chapter 11 Trustee**
**By:    Edwin E. Brooks**
            **David S. Almeida**
**191 North Wacker Drive, Suite 3700**
**Chicago, IL 60606**

**LAW OFFICES OF AVRUM J. ROSEN**
**Attorneys for Defendant, Matrix Realty Group, Inc.**
**By:    Avrum J. Rosen**
**38 New Street**
**Huntington, New York 11743**

1

**ADLAI S. HARDIN, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

### DECISION ALLOWING DAMAGES IN EXCESS OF THE BIDDING DEPOSIT

This decision follows a lengthy post-trial decision (the "July 25 Decision") in which I ruled that Matrix Realty Group, Inc. ("Matrix") was liable to the plaintiffs-debtors ("FMG") for damages arising from its anticipatory repudiation of a contract to purchase substantially all of the debtors' assets for $26.77 million.  (See In re Food Mgmt. Group, LLC, 372 B.R. 171 (Bankr. S.D.N.Y. 2007).)  This decision relates solely to the issue of whether the debtors' claim for damages is capped by the amount Matrix forwarded to the debtors as a bidding deposit.  I hold that it is not for the reasons set forth herein.

### Facts

The Court's jurisdiction and the facts giving rise to the dispute are set forth in great detail in the July 25 Decision.  The facts presented here merely aim to amplify discussion of the sole issue considered in this decision.

On April 18, 2005, Matrix executed a Purchase and Sale Agreement (the "Matrix Contract") with the debtors to purchase substantially all of the debtors' assets.  The total purchase price of the Matrix Contract was $26,770,000 – with $2,400,000 to be paid immediately as a deposit (the "Bidding Deposit"), $21,600,000 due at closing and the remaining $2,770,000 to be paid with interest over ten years.  Matrix delivered the $2,400,000 Bidding Deposit but subsequently repudiated the contract and has not advanced any additional funds to the debtors.  In the July 25 Decision I held Matrix liable for its anticipatory breach of the Matrix Contract and reserved judgment on damages pending further argument.  Matrix now contends that the damages that may be awarded in connection with its breach are limited to the amount of its $2,400,000 Bidding Deposit as a matter of law.

2

As a sale of substantially all of the debtors' assets, the Matrix Contract was subject to the jurisdiction and approval of this Court. The Matrix Contract expressly incorporated this Court's February 22, 2005 order that approved, *inter alia*, certain auction bidding procedures (the "Bidding Procedures Order"). Section 9.8 of the Matrix Contract reads as follows:

> 9.8    Entire Agreement. This AGREEMENT sets forth the entire agreement and understanding of the parties hereto and supersedes any and all written or oral agreements or representations between parties hereto relating to the transactions contemplated by this AGREEMENT or related documents, except that *this AGREEMENT incorporates those certain Court Orders approving the BIDDING PROCEDURES and approving the Bankruptcy Code Section 363 sale pursuant to this AGREEMENT*.  (emphasis added)

The Matrix Contract therefore duly incorporated the following language in Step Two, subparagraph (C) of the "Bidding Procedures" as approved on page 3 of the Bidding Procedures Order:

> *Without limiting the right of the Debtors to seek recovery of actual or additional damages*, the Debtors shall be entitled to retain the Deposit of any Successful Bidder who fails to close the transaction because of a breach or failure by such Successful Bidder and such Deposit shall be deemed forfeited by such defaulting Successful Bidder and shall not be credited against the purchase price paid by the Backup Bidder. (emphasis added)

Neither the Bidding Procedures Order nor the Matrix Contract ever uses the term "liquidated damages." There is no language in the Matrix Contract, the Bidding Procedures or any Order of the Court that in any way purports to limit the "right of the debtors to seek recovery of actual or additional damages" expressly reserved for the debtors in the Bidding Procedures and incorporated in the Matrix Contract.

However, the term "liquidated damages" does appear once in the motion to approve the Bidding Procedures. Paragraph 52(b) of the motion states in relevant part: "In the event a Successful Bidder defaults, Debtors are entitled to retain any deposit of the Successful Bidder as liquidated damages." Nothing in this statement suggests an intent to preclude the debtors from

3

recovering actual damages greater than the Bidding Deposit.  Normally one would construe such language merely to mean that the debtors would be entitled to retain the Deposit "as liquidated damages" even if the debtors could not prove actual damages.  But Matrix asks the Court to turn this normal inference on its head.  This reference to liquidated damages and an overly broad interpretation of selected case law have led Matrix to argue that the recoverable damages should be limited to the amount of its deposit.

## Discussion

**A. Actual damages are the standard measure of damages under New York law**

It is a well-settled principle of black letter contract law that absent a contract provision to the contrary, the damages that may be recovered by a non-breaching party are the actual damages suffered by that party.  (See, e.g., U.S. Naval Inst. v. Charter Commc'ns, Inc., 936 F.2d 692, 696 (2d Cir. 1991); Long Island Contracting & Supply Co. v. City of New York, 204 N.Y. 73, 81-82 (N.Y. 1912) ("'The prima facie measure of damages for the breach of a contract is the amount of the loss which the injured party has sustained thereby.'") (quoting United States v. Behan, 110 U.S. 338, 344 (1884)).  See generally Restatement (Second) of Contracts § 347 (1981).)  The restitution is "intended to return the parties to the point at which the breach arose and to place the nonbreaching party in as good a position as it would have been had the contract been performed."  (Brusthon-Moira Cent. School Dist. v. Fred H. Thomas Assocs., P.C., 91 N.Y.2d 256, 261 (N.Y. 1998).  See also 11-55 Corbin on Contracts § 55.3 (2007).)  Thus New York courts have acknowledged the general rule that:

> [I]n the absence of a liquidated damages clause the measure of seller's damages is the difference in contract price and the price at which the vendor subsequently sells the property, or the difference in selling price and market value at the time of the breach.  Where the purchaser has given the vendor a down payment, the vendor is entitled to keep it upon purchaser's breach, and he may additionally recover up to the amount of his actual and consequential damages.

4

> Where, on the other hand, a liquidated damages clause has been inserted in the contract, it will be upheld, unless it is determined to be a penalty and seller's recovery is limited to the amount provided for.

(Shulkin v. Dealy, 504 N.Y.S.2d 342, 344 (N.Y. Sup. Ct. 1986) (noting the rule in both the real estate and the UCC context) (citations omitted). Accord McLean v. Kessler, 426 N.Y.S.2d 704 (N.Y. Civ. Ct. 1980).) Accordingly, in order for FMG's damages to be limited to Matix' Bidding Deposit, the contract must have so provided.

**B. The Matrix Contract does not contain a liquidated damages provision**

The term "liquidated damages" does not appear anywhere in the Matrix Contract or in the incorporated Bidding Procedures Order or the Bidding Procedures themsleves, nor does the Matrix Contract in any way provide that the Bidding Deposit is a cap on the amount of damages the debtors may recover. Quite the contrary, language expressly incorporated by the Matrix Contract states that upon the purchaser's breach, the debtors are entitled to retain the Bidding Deposit "[w]ithout limiting the right of the Debtors to seek recovery of actual or additional damages."

The only reference to "liquidated damages" that can be found in any relevant document is a statement in the Bidding Procedures motion that "[i]n the event a Successful Bidder defaults, Debtors are entitled to retain any deposit of the Successful Bidder as liquidated damages." While it would appear self-evident that this colloquial reference was intended to do no more than make clear that the debtor would be entitled to retain a defaulting purchaser's deposit without proving actual damages, it is sufficient to note that the statement is found *only* in the motion; it is not found in the actual Bidding Procedures Order, or in the Bidding Procedures, or in any other Court order, or in the Matrix Contract, and it is consequently irrelevant to the interpretation of the Matrix Contract.

5

Matrix perceives the liquidated damages reference in the motion to be in conflict with the provision incorporated by the Bidding Procedures Order that expressly contemplates the debtors' right to seek actual damages. Thus Matrix argues, "where there are completing clauses [sic – should read "competing"?]…the Courts will follow the traditional rule that in the event of default, the seller may retain the deposit and nothing further." (Memorandum of Law Submitted by Defendant in Connection with the Issue of Damages at 11-12 (the "Matrix Memorandum of Law").) While Matrix does not cite any case or other authority for this proposition, it seems that Matrix is arguing that in the event of a conflict between a liquidated damages provision and a provision calling for actual damages, the liquidated damages provision prevails. If so, Matrix is wrong. In the case where a contract contains both a liquidated damages provision and a provision calling for actual damages, it is the liquidated damages provision that is read out of the contract. (See Chateau D'If Corp. v. City of New York, 641 N.Y.S.2d 252, 254 (N.Y. App. Div. 1996) (holding that because "a liquidated damages clause and a provision entitling a nondefaulting vendor to further damages are incompatible and cannot coexist," the liquidated damages provision is rendered unenforceable) (citing Todt Hill Homes v. City of New York, Index No. 45735/89 (N.Y. Sup. Ct., NY County, Apr. 14, 1990) (DeGrasse, J.) (unreported)).)

Matrix argues that because the language of the contract itself is silent on the issue of damages,[1] the Court should look to the motion and read a liquidated damages clause into the contract. I decline such an invitation because it is contrary to the express terms of the Matrix Contract[2] and because New York law does not permit such an endeavor: "A liquidated damages

---

[1] As noted above, this contention is wrong. The Matrix Contract expressly incorporated language that contemplated actual damages: "Without limiting the right of the Debtors to seek recovery of *actual or additional damages*…." (See the Bidding Procedures, annexed to the Bidding Procedures Motion as Exhibit 'A,' that were approved by the Court in the Bidding Procedures Order on page 3 and incorporated into the Matrix Contract by Section 9.8 (emphasis added).)

[2] See footnote 1, supra.

6

provision may not be implied and must be agreed to." (Consolidated Rail Corp. v. MASP Equip. Corp., 486 N.Y.S.2d 4, 6 (N.Y. App. Div. 1985) (citing Winkelman v. Winkelman, 203 N.Y.S. 63 (N.Y. App. Div. 1924)).)

The Bidding Deposit was given as security to ensure that Matrix would consummate the transaction, not as a limitation on the damages recoverable by the debtors in the event of Matrix' default.

## C. The Bidding Deposit is not otherwise an appropriate measure of damages

The above discussion definitively establishes that the debtors are entitled to damages in excess of Matrix' Bidding Deposit. I will nonetheless address Matrix' argument that a line of cases[3] beginning with the case of Maxton Builders v. Lo Galbo, 509 N.Y.S.2d 507 (N.Y. 1986) establishes a principle whereby the "ten percent" Bidding Deposit[4] is the correct measure of damages.[5] Matrix contends that Maxton Builders and its progeny stand for the proposition that

---

[3] The following cases were cited by Matrix: Cipriano v. Glen Cove Lodge #1458, B.P.O.E., 1 N.Y.3d 53 (N.Y. 2003) (holding that where a purchaser of real estate fails to consummate the transaction pursuant to a lawful excuse, the purchaser may recover her deposit); Maxton Builders v. Lo Galbo, 509 N.Y.S.2d 507 (N.Y. 1986) (allowing the seller to retain the deposit of a defaulting purchaser where the subsequent sales price was equal to the contract price); Truck Rent-A-Center, Inc. v. Puritan Farms 2nd, Inc., 41 N.Y.2d 420, 423-24 (N.Y. 1977) (upholding a liquidated damages clause that was a reasonable forecast of damages); Lawrence v. Miller, 86 N.Y. 131 (N.Y. 1881) (establishing the rule that a defaulting purchaser of real estate may not recover its deposit); (Gillette v. Meyers, 839 N.Y.S.2d 584 (N.Y. App. Div. 2007) (allowing seller to recover the deposit of a defaulting purchaser without discussion of actual damages); Verolla v. Beechwood Carmen Building Corp., 841 N.Y.S.2d 610 (N.Y. App. Div. 2007) (holding that the defendant was entitled to retain a 14% deposit pursuant to the terms of the real estate contract following the plaintiff's default); Gardiner v. Carlson, 171 N.Y.S.2d 494 (N.Y. App. Div. 1991) (holding that in the absence of a contract provision allowing them to retain the deposit, the sellers could only recover their actual damages, which were less than the significant deposit); NYCTL 1996-1 Trust v. Viola, 2003 N.Y. Misc. LEXIS 1188 (N.Y. Sup. Ct. 2003) (allowing the plaintiffs who foreclosed upon the defendants' property to retain the deposits of defaulting foreclosure sale purchasers pursuant to liquidated damages clauses in the foreclosure sale agreements rather than applying those deposits to the defendants' deficiency or remitting them to the defendants).

[4] In its Memorandum of Law, Matrix argues that a ten percent deposit is an appropriate measure of damages and refers to the Bidding Deposit as "the ten percent deposit provided by Matrix to the Debtor." (Matrix Memorandum of Law at 5.) However, it should be noted that the deposit forwarded by Matrix was not ten percent of the total purchase price. The Bidding Deposit was $2,400,000 and the total purchase price was $26,770,000. Thus even if Matrix were correct that damages should be capped at a 10 percent deposit, Matrix would still owe the debtors $277,000.

[5] In addition to its argument based on Maxton Builders, Matrix makes two other arguments that are equally without merit. First, Matrix argues that because the Matrix Contract contained a provision that allowed the purchaser (Matrix) to recover its deposit in the event that Dunkin' Donuts exercised its contractual right of first refusal, the debtors should be similarly limited to recovery of the Bidding Deposit in the event of Matrix' default under the

7

where a purchaser defaults on its purchase obligation, the seller may retain a ten percent deposit as damages, *and recover no more*. Matrix' argument is simply wrong. Maxton Builders and its progeny *do not* stand for the proposition that a seller's recoverable damages arising from a prospective buyer's breach are limited to a ten percent down payment.[6]

Maxton Builders held that the aggrieved seller could retain a ten percent deposit in a case where the property was subsequently sold for an amount *equal to* the amount of the breached contract. Significantly, the seller was not even seeking damages in excess of the deposit amount. (509 N.Y.S.2d at 508.) The court based its ruling on the contracts principle that "a party who defaults on a contract cannot recover the amount or value of part performance." (Id. at 510 (citations omitted).) The purpose of the Maxton Builders rule is not, as Matrix seems to suggest, to replace actual damages as a measure of damages by judicially imposing a liquidated damages provision in all real estate contracts. In no way does this case or any other case cited by Matrix limit the amount of damages that a seller may be awarded when a purchaser defaults to the amount of a deposit. Instead, the cases cited by Matrix allow an aggrieved seller of real estate to retain a ten percent deposit where the actual damages, as measured by the difference in the contract price and the eventual sales price, are substantially *less* than the deposit. Courts have even held that the deposit can be retained where the eventual sales price is greater than the

---

"doctrine of mutuality." (See Matrix Memorandum of Law at 9.) Again, Matrix fails to cite any proposition of law supporting this contention, which is incorrect. The doctrine of mutuality of remedy (it is assumed that Matrix is referring to this doctrine rather than the doctrine of mutuality of consideration, mutuality of obligation or mutuality of assent) generally pertains to the availability of specific performance as a remedy. (See 12-65 Corbin on Contracts § 1178 (2007).) Accordingly, the doctrine of mutuality of remedy has no bearing on the present matter because no party is seeking specific performance. Second, Matrix asserts that if the debtors are awarded the Bidding Deposit and actual damages, the debtors will be in effect obtaining an impermissible double recovery. This assertion is wrong because if actual damages are awarded in excess of the Bidding Deposit, the total amount recoverable will be reduced by the amount of the Bidding Deposit that the debtors have already retained.

[6] The debtors have argued that the Maxton Builders line of cases is inapposite because those cases involve sales of real estate, whereas the Matrix Contract was the sale of a business. I need not consider whether the Matrix Contract, which included sales of leasehold interests, was or was not a contract for the sale of real estate such that the Maxton Builders cases are on point because those cases simply do not support Matrix' contentions, even in the real estate context.

8

breached contract price. (See Johnson v Werner, 407 N.Y.S.2d 28, 30 (N.Y. App. Div. 1978); Silverstein v United Cerebral Palsy Ass'n of Westchester, 232 N.Y.S.2d 968, 973 (N.Y. App. Div. 1962).) These cases simply do not establish a rule whereby damages cannot be recovered in excess of the ten percent deposit. This is especially true in cases such as the one at bar where the contract did not contain a liquidated damages provision that may otherwise limit damages in excess of the liquidated damages.

## Conclusion

In light of the foregoing, the debtors are entitled to seek actual damages in excess of the Bidding Deposit.

Dated: White Plains, New York
December 10, 2007

                                        **/s/ Adlai S. Hardin, Jr.**
                                        UNITED STATES BANKRUPTCY JUDGE